Campbell v. Bardwell, 157 Ill. App. 611.

---

## F. A. Campbell, Appellant, v. Abalino C. Bardwell, Appellee.

### Gen. No. 5376.

VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

Assumpsit. Appeal from the Circuit Court of Lee county; the Hon. R. S. Farrand, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910.

John E. Erwin, for appellant.

E. E. Wingert, for appellee.

Mr. Presiding Justice Willis delivered the opinion of the court.

This suit was brought by F. A. Campbell, doing business in Chicago as the Central Detective Agency, against Abalino C. Bardwell, a resident of Dixon, to recover a balance of $478.70 claimed to be due for detective services. A trial resulted in a verdict and judgment for Bardwell, from which judgment Campbell prosecutes this appeal.

The evidence shows that the town of Dixon had adopted the local option law, that a league had been formed, and a fund raised to secure evidence, upon which to convict violators of the law. Appellee was the agent of the league and custodian of its funds. Appellant solicited, by correspondence, employment by the league to secure evidence of illegal liquor selling, stating that he did the law and order league work of Chicago, and most of the anti-saloon league work of the State; that he would guarantee nothing but first class service and good results. Appellee replied that they were unfavorable to the use of detectives unless fortified by strong evidence, and asked what his charges would be, and how many men he thought it would be advisable to set to work. Appellant replied that his charges were $5 per day and expenses; and that two men would be sufficient to do the work; that he would send nothing but experienced and reliable men who would "deliver the goods." It was agreed that appellant should send out operators to secure evidence, and he suggested that they engage in the chicken business, and said he thought it would meet the expenses of the undertaking. It was agreed that the men go into that business and rent a place for that purpose. It was understood that

appellee should have nothing to do with the business or the work of the men; that he was not to know who the detectives were; and they were not to know that he had any interest in their work. They were to work under the direction of appellant from Chicago and were to report to him. The contract was made the last of June, and the grand jury were to meet September 21. On July 8, appellant sent a man named Anderson to Dixon. It was not claimed that he was a detective, but that he was an excellent man in the poultry business. On or about July 13, he was joined by a man named Elms who was to operate as a detective, and August 16, F. A. Campbell's son, was sent out to replace him. Elms admitted, that, until Campbell came, no drinks were obtained in Dixon, but the first daily report made three days after Campbell's arrival shows that they got beer. On September 15, at his son's request, appellant sent out two men, Mays and Heard, neither of whom made reports that ever reached appellee, nor did they appear as witnesses. They rendered no service of any value to appellee or the cause which they represented, and possessed none of the qualifications which appellant agreed to furnish. The most that they did was to charge $5 a day for services and run up heavy expenses for cigars and many other things, including drinks at a time when they made no reports that they found any intoxicating liquor being sold in the town. Appellant sent these men without knowledge of their qualifications, and he conceded that they turned out to be dead beats, and that Mays deserved to be indicted.

The evidence shows that instead of the poultry business paying the expenses of the undertaking it was conducted at a loss, and nothing was done by appellant's agents to procure any evidence of the violation of the law until about two or three weeks before the grand jury met, when they secured sufficient evidence so that a number of indictments were returned thereon. Some trials were had on the indictments, but there were no convictions, and only one plea of guilty. On October 16, appellant told appellee that he still owed him $516. Not understanding how there could be that

amount due, appellee began to investigate and to check over the account, which he had not done up to this time, relying upon appellant's honesty, and became convinced that he had already overpaid appellant. Some correspondence followed, and on May 28 of the next year, at appellee's request, appellant rendered an itemized account, showing a balance due of $516.17. It is true that the record discloses letters from appellee admitting a further liability, at any rate, for some part of the balance sued for. But these letters were written before he had seen the account and ascertained the manner in which he had been treated by appellant. When he had the entire account before him and ascertained the real facts, he refused to pay the balance, and we are of the opinion under all the circumstances appearing in evidence, that he is not concluded by the statements in his letters.

We are satisfied that the jury were warranted in finding that appellant did not in good faith perform the services which he undertook, and that $1,073.63 which appellee paid appellant was much more than he received value for. We think that while there may be some errors of law in the record the judgment does substantial justice.

The judgment is affirmed.

*Affirmed.*